THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CEDRIC F. DUPREE, JR., Defendant-Appellant.

First District (2nd Division) No. 1—98—3931

Opinion filed May 20, 2003.

GORDON, J., specially concurring.
COUSINS, J., dissenting.

Rita A. Fry, Public Defender, of Chicago (Eileen T. Pahl, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, and Katherine Blakey Cox, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAHILL delivered the opinion of the court:
The ultimate issue we reach in this case is this: may a defendant

tried *in absentia* obtain a review of his conviction and sentence under section 115—4.1(g) of the Code of Criminal Procedure of 1963 (the Code) (725 ILCS 5/115—4.1(g) (West 2000)) even though he has failed to establish that his absence from trial was without fault and due to circumstances beyond his control? We conclude the answer may be "yes," but only if the record on appeal establishes that the trial conducted in the defendant's absence violated principles of fundamental fairness and due process under the cause and prejudice test adopted by our supreme court. See generally *People v. Jackson*, 205 Ill. 2d 247 (2001); *People v. Simpson*, 204 Ill. 2d 536 (2001); *People v. Jimerson*, 166 Ill. 2d 211, 652 N.E.2d 278 (1995). We conclude that defendant here failed to establish that his trial violated fundamental fairness and due process and, accordingly, affirm the conviction and sentence. On our way to this conclusion, we reject an argument raised by the State that section 115—4.1(g) of the Code is unconstitutional, as an encroachment on the rule-making powers of our supreme court, or in the alternative, that defendant cannot ask for review of his conviction or sentence without first establishing that his absence from trial was without fault and due to circumstances beyond his control.

Defendant was charged with theft by deception in February 1997. A jury was selected on June 18, 1997. Defendant was told by the trial court judge that he was required to appear in court when his case was on trial. Defendant was also told that he could be tried and sentenced in his absence should he choose not to attend. The jury trial began on June 19. Defendant failed to appear. All attempts to find or contact defendant failed. The trial court then found that defendant's absence was willful. Defendant was tried *in absentia* under section 115—4.1(a) of the Code (725 ILCS 5/115—4.1(a) (West 2000)). The jury returned a guilty verdict on June 19, 1997. The court then issued a bond forfeiture warrant and continued the case until July 21, 1997, for sentencing. A posttrial motion filed on defendant's behalf was argued and denied on July 21. Defendant did not appear. He was then sentenced *in absentia* to 10 years in prison. Defendant never filed a notice of appeal from his conviction or sentence.

Defendant was arrested 11 months later, on June 23, 1998. He filed a posttrial motion on September 8, 1998, asking for a new trial or, alternatively, a new sentencing hearing under section 115—4.1(e) of the Code (725 ILCS 5/115—4.1(e) (West 2000)). Defendant alleged that his absence was not willful but that he feared being wrongfully convicted. Defendant also argued that his sentence was excessive. The trial court denied defendant's posttrial motion after a hearing on September 9, 1998. The court said:

"[Defendant] is well, well beyond the 30 days from the date of conviction from which to file post trial motions. The only issue at this juncture is whether the defendant's failure to appear in trial was due to circumstances beyond his control.

It appears what you're trying to do in this motion entitled post trial motion is bootstrap post trial motion issues that might have been valid had they been filed in a timely manner.

Sentencing issues are also not before this Court because he only had 30 days within which to file a motion to reconsider his sentence. So those are not validly before this court.

The only issue which I will consider in your post trial motion is whether the defendant's failure to appear for trial was due to circumstances beyond his control. And I would submit that in the motion the allegation that he did not appear due to fear of being wrongfully convicted. He's admitting that he willfully absented himself and his failure to appear was indeed not due to circumstances beyond his control."

■ Defendant filed a notice of appeal on September 29, 1998. The notice sought review of the several orders dating from June 19, 1997, through September 9, 1998. Defendant's notice of appeal based jurisdiction on both Supreme Court Rule 603 (134 Ill. 2d R. 603) and section 115—4.1(g) of the Code (725 ILCS 5/115—4.1(g) (West 2000)). Sections 115—4.1(e) and (g) read:

"(e) When a defendant who in his absence has been either convicted or sentenced or both convicted and sentenced appears before the court, he must be granted a new trial or new sentencing hearing if the defendant can establish that his failure to appear in court was both without his fault and due to circumstances beyond his control. A hearing with notice to the State's Attorney on the defendant's request for a new trial or a new sentencing hearing must be held before any such request may be granted. At any such hearing both the defendant and the State may present evidence.
***

(g) A defendant whose motion under paragraph (e) for a new trial or new sentencing hearing has been denied may file a notice of appeal therefrom. Such notice may also include a request for review of the judgment and sentence not vacated by the trial court." 725 ILCS 5/115—4.1(e), (g) (West 2000).

The State filed a motion to dismiss, challenging defendant's claim that section 115—4.1(e) vests us with appellate jurisdiction. We took the motion with the case. The State argues that section 115—4.1(g) is unconstitutional or, alternatively, that section 115—4.1(g) does not apply to this case. The State also notes the absence of a timely notice of appeal under Supreme Court Rule 606 (134 Ill. 2d R. 606).

The State's constitutional argument suggests that section 115—4.1(g) supplants the direct appeal requirements set out in Rule 606 and creates appellate jurisdiction where none would otherwise exist. The State concludes that this legislative encroachment violates the separation of powers doctrine. We disagree.

The interplay between Rule 606 and section 115—4.1(g) was analyzed by our supreme court in *People v. Partee*, 125 Ill. 2d 24, 530 N.E.2d 460 (1988). The issue in *Partee* was whether a defendant convicted *in absentia* could file a timely direct appeal of his conviction without first filing a motion under section 115—4.1(e) to establish that his absence was not willful. *Partee*, 125 Ill. 2d at 28. The defendant in *Partee* was convicted and sentenced *in absentia*. A timely notice of appeal was filed on the defendant's behalf. *Partee*, 125 Ill. 2d at 28. The State moved to dismiss for lack of jurisdiction.

The State in *Partee* interpreted section 115—4.1(e) motions as a prerequisite to an appeal of a judgment *in absentia* and argued that, until a defendant prevailed in a section 115—4.1(e) hearing, a conviction and sentence *in absentia* are not final and appealable under subsection (g). *Partee*, 125 Ill. 2d at 28. Our supreme court rejected this argument and found no language in the *in absentia* statute that deprives the appellate court of jurisdiction over an absent defendant's timely direct appeal of his sentence and conviction. *Partee*, 125 Ill. 2d at 30. In finding that a conviction and sentence *in absentia* are immediately final and appealable under Rule 606, the *Partee* court noted that even a willfully absent defendant "retains some of the procedural rights of a present defendant." *Partee*, 125 Ill. 2d at 31. See, *e.g.*, 725 ILCS 5/115—4.1(a) (West 2000) ("All procedural rights guaranteed by the United States Constitution, Constitution of the State of Illinois, statutes of the State of Illinois, and rules of court shall apply to the proceedings the same as if the defendant were present ***").

■ The *Partee* court then set out an additional reason for rejecting the State's interpretation: a section 115—4.1(e) motion to vacate the underlying judgment and a sentence *in absentia* are not part of the same case. *Partee*, 125 Ill. 2d at 35. Instead, a section 115—4.1(e) motion is

> "more akin to a collateral attack upon a final judgment than it is to a procedural step in the direct appeal of that judgment. In other words, a section 115—4.1(e) motion is analogous to an action for post-judgment relief under section 2—1401 of the Civil Practice Law (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401) *or an action for post-conviction relief under section 122—1 of the Code of Criminal Procedure* (Ill. Rev. Stat. 1987, ch. 38, par. 122—1 *et seq.*)" (Emphasis added.) *Partee*, 125 Ill. 2d at 35.

The availability or pendency of a direct appeal does not affect the ripeness of a claim for postconviction or postjudgment relief. *Partee*, 125 Ill. 2d at 35. A trial court may hear a section 115—4.1(e) motion without affecting the appellate court's jurisdiction over a timely filed direct appeal of an *in absentia* judgment. *Partee*, 125 Ill. 2d at 36.

The *Partee* court also noted that the State's interpretation of section 115—4.1(e) would place defendants in an "intolerable dilemma." *Partee*, 125 Ill. 2d at 31. A willfully absent defendant who wishes to challenge the fairness of his *in absentia* conviction for reasons unrelated to his absence would be prevented from doing so until he moved for a new trial under section 115—4.1(e) in which he made the unwarranted allegation that his absence was not willful. *Partee*, 125 Ill. 2d at 31.

Despite the procedural difference between *Partee* and the case before us (the conscientious trial lawyer in *Partee* filed a timely postjudgment motion and notice of appeal even though his client had vanished), the supreme court's analysis is our best guide to resolve the issues in this case.

As in *Partee*, the State's argument here that the legislature created a loophole through which appellate jurisdiction is improperly vested implies that a motion under section 115—4.1(g) is a continuation of the *in absentia* proceedings. But *Partee* makes clear that an absent defendant retains the same constitutional rights and guarantees afforded a present defendant, including a fair trial free from procedural defects. Section 115—4.1(g) is the means by which an absent defendant may collaterally attack an *in absentia* judgment he believes is fundamentally unfair. Contrary to the State's claim, there is no legislative encroachment or conflict with Rule 606 given the collateral nature of a section 115—4.1(g) motion. *People v. Williams*, 274 Ill. App. 3d 793, 655 N.E.2d 470 (1995), reached a similar conclusion. But *Williams* presents us with another issue.

The defendant in *Williams* was convicted and sentenced *in absentia*. *Williams*, 274 Ill. App. 3d at 794-95. The defendant filed a motion under section 115—4.1(e) to vacate the *in absentia* judgment nine years after he was sentenced. *Williams*, 274 Ill. App. 3d at 795. The motion was denied and the defendant appealed. The denial was affirmed on appeal in an unpublished order but the court later allowed a petition for rehearing. *Williams*, 274 Ill. App. 3d at 795. The *Williams* court found that the notice of appeal was sufficient to request review of the judgment and sentence under section 115—4.1(g) of the Code. The defendant had raised issues relating to his conviction and sentence, but not to the trial court's finding that the defendant's absence was his own fault. *Williams*, 274 Ill. App. 3d at 795.

The *Williams* court then considered whether section 115—4.1(g), which allows review of the *in absentia* conviction and sentence, conflicted with Rule 606, which governs direct appeals. *Williams*, 274 Ill. App. 3d at 796. In finding that no conflict exists, the *Williams* court followed the *Partee* reasoning that an appeal under section 115—4.1(g) is a collateral proceeding that is independent of and has no effect on a direct appeal under Rule 606. *Williams*, 274 Ill. App. 3d at 797-98. But *Williams* took one step further and referred to an appeal under section 115—4.1(g) as a "general review." *Williams*, 274 Ill. App. 3d at 798. The court noted that a "general review" created some tension between our supreme court and the legislature, but concluded that, because review under section 115—4.1(g) was a "matter of procedure," the conflict was only indirect. The court did not elaborate on this statement. *Williams*, 274 Ill. App. 3d at 798-99. The court then addressed the merits of the appeal. *Williams*, 274 Ill. App. 3d at 799.

Defendant cites *Williams* as support for what he now seeks: the functional equivalent of a Rule 606 direct appeal under section 115—4.1(g). The State urges us to reject *Williams*. Defendant's and the State's readings are based on an assumption that *Williams* compels the appellate court to reach the merits of every appeal under section 115—4.1(g). We do not believe *Williams* stands for such a broad proposition. First, a timely direct notice of appeal may be filed on a fugitive defendant's behalf (*Partee*, 125 Ill. 2d at 31), and there is authority for the proposition that such an appeal may be briefed, alleged trial errors addressed, and a resolution reached. But the appellate court retains discretion not to grant relief if the defendant remains a fugitive. See *People v. Estep*, 413 Ill. 437, 109 N.E.2d 762 (1952). So, too, under section 115—4.1(g) a returned fugitive may "request" an appeal, but we do not believe that the appellate court must entertain it unless issues of fundamental fairness and due process are apparent.

A better reading, we believe, and one more in line with *Partee*, is that an appeal under section 115—4.1(g) that raises issues of fundamental fairness and due process overrides the waiver analysis usually applied to defendants who fail to file a timely notice of appeal. This principle reconciles the *Partee* rationale, that a section 115—4.1(g) appeal is a collateral proceeding designed to protect "procedural" rights of absent defendants, with the result in *Williams*. An analysis of *Williams* shows that two of the issues raised on appeal in that case related to the defendant's fitness to stand trial and the lack of a proper admonishment that the defendant could be tried *in absentia*. *Williams*, 274 Ill. App. 3d at 795. These are alleged procedural errors in the underlying proceeding which, under *Partee*, are not forfeited by the absent defendant.

Were we to read *Williams* broadly, as mandating review of all trial issues that could be raised under a timely direct appeal, we would in effect be granting a fugitive defendant greater protection than we allow a defendant under the Post-Conviction Hearing Act (the Act) (725 ILCS 5/122—1 *et seq.* (West 2000)). A defendant seeking relief under the Act must show that substantial violations of his constitutional rights occurred at trial that could not have been raised on direct appeal. 725 ILCS 5/122—1(a) (West 2000); *People v. Smith*, 195 Ill. 2d 179, 745 N.E.2d 1194 (2000). A postconviction petition is also subject to time limits (725 ILCS 5/122—1(c) (West 2000)). Here defendant is arguing for an unfettered right to raise all alleged errors at trial whenever he is arrested on a fugitive warrant or when he chooses to resurface and argue them. To the extent that *Williams* may be read to support this position, we choose not to follow it.

We read section 115—4.1(g) as investing the appellate court with a certain amount of discretion: "Such notice may also include *a request for review* of the judgment and sentence not vacated by the trial court." (Emphasis added.) 725 ILCS 5/115—4.1(g) (West 2000). The language does not compel the appellate court to undertake such a review unless, as we read *Partee*, the defendant raises procedural issues that implicate fundamental fairness and due process. We recognize, as the dissent points out, that *Williams* did not require a fundamental fairness analysis to reach the substantive issues. We recognize that *Williams* was relevant authority at the time this appeal was filed. For that reason, and to address one of the concerns of the opinion, we will address each of the substantive issues.

Defendant's challenge to the admission of other crimes evidence is unsupported by the record. Defendant did not file a motion *in limine* to bar evidence of other crimes. Defendant only made an oral motion to bar testimony that defendant stole his girlfriend's car. Defendant withdrew his oral motion when the State explained that the evidence would not be used to show theft of the car, only that defendant used the car when he stole money from another victim. Waiver aside, defendant's argument fails on the merits.

Defendant claims that other crimes evidence was introduced to establish intent, knowledge, identification and absence of mistake. Defendant contends that none of these grounds was proper as these factors were established by the criminal act itself. Defendant also claims that resort to other crimes evidence to establish identification was unnecessary since the witnesses identified defendant as the offender.

■ The State posits that the evidence was used to establish *modus operandi*. *People v. Illgen*, 145 Ill. 2d 353, 364-65, 583 N.E.2d 515

(1991). We agree with defendant that *modus operandi* evidence is not proper where identity is not at issue. *People v. Biggers*, 273 Ill. App. 3d 116, 123, 652 N.E.2d 474 (1995). Identity is at issue where a defendant denies he was the offender. *Biggers*, 273 Ill. App. 3d at 124. Defendant here did not deny he took the victim's money. He only claimed that he did not take the money under a deception as charged by the State.

■ We note that the trial court instructed the jury to limit its consideration of the other crimes evidence to intent, knowledge, identity and absence of mistake. Even if such an instruction may have been improper under this record, the instruction did reduce the likelihood that the jury would consider the other crimes evidence as probative of defendant's propensity to commit crimes—the major concern associated with such evidence. See *People v. Allen*, 335 Ill. App. 3d 773, 780 N.E.2d 1133 (2002). The claimed error is harmless. *People v. Nieves*, 193 Ill. 2d 513, 530, 739 N.E.2d 1277 (2000) (improper admission of other crimes evidence is harmless error when a defendant is neither prejudiced nor denied the right to fair trial).

■ Defendant next contends that the trial court erred in refusing to instruct the jury to give no weight to defendant's absence at trial. Defendant reasons that his absence was nothing more than "an exercise of his constitutional right not to appear at trial" and that the jury should have been instructed that his absence was not an inference of his guilt. Defendant attempts to equate a willful absence from trial with a defendant's right not to testify. The latter is a constitutional right, the former is not. See U.S. Const., amend V; *People v. McDonald*, 227 Ill. App. 3d 92, 97, 590 N.E.2d 1003 (1992). The trial court's refusal to instruct the jury on defendant's absence was not error.

■ Defendant's next argument, that the trial court improperly allowed witnesses to testify as to their opinions, relates to three statements by State witnesses that defendant was posing as an attorney. Defendant claims that the statements amount to improper opinion testimony from lay witnesses. We disagree.

Setting aside the fact that defendant failed to object to the three statements and failed to raise them in his motion for a new trial, defendant overlooks that a lay witness is allowed to express an opinion based on personally observed facts. *People v. Terrell*, 185 Ill. 2d 467, 497, 708 N.E.2d 309 (1998). Here, the witnesses testified to defendant's demeanor, the contents of his briefcase and the documents they signed which identified defendant as an attorney. These observations reasonably caused the witnesses to recount at trial that defendant acted like an attorney. There was no error.

Defendant's next two arguments relate to the State's closing argument. Defendant claims that the State improperly used defendant's flight from the scene as a demonstration of his guilt and misstated the evidence.

■ We have already determined that the trial court was not required to instruct the jury relating to defendant's absence. The State's reference to defendant's absence is also not error as it was a proper comment based on evidence adduced at trial. *People v. Emerson*, 189 Ill. 2d 436, 490, 727 N.E.2d 302 (2000).

Defendant also mischaracterizes the record and quotes the State's closing argument out of context to argue that he was prejudiced by misstatements of evidence. Our review of the arguments in context shows no misstatement, prejudicial or otherwise, was made. There is no error.

■ Defendant next argues that the evidence against him does not support his conviction. This challenge to the sufficiency of the evidence requires reversal if a rational trier of fact cannot find the essential elements of the offense beyond a reasonable doubt. *People v. Williams*, 193 Ill. 2d 306, 338, 739 N.E.2d 455 (2000).

A defendant commits theft by deception when he knowingly obtains control over another's property by deception with the intent to keep that property. 720 ILCS 5/16—1(a)(3) (West 2000). The evidence here showed that defendant, while posing as an attorney, was paid a $300 retainer fee and given $500 to bond a person out of jail. Defendant never bonded anyone out of jail and never returned the $800 paid by the victim. A rational trier of fact could find the essential elements of theft by deception beyond a reasonable doubt under this record.

■ Defendant last argues that his sentence is excessive. Sentencing is left to the wide discretion of the trial court, and we will not reverse absent an abuse of that discretion. *People v. Perruquet*, 68 Ill. 2d 149, 154, 368 N.E.2d 882 (1977). There is no abuse of that discretion here where defendant was sentenced within the proper statutory range. Defendant's earlier convictions made him eligible for an extended term of up to 10 years. 730 ILCS 5/5—5—3.2, 5—8—2(5) (West 2000). A sentence within the statutory range is not excessive unless it is at variance with the spirit and purpose of the law or manifestly disproportionate to the offense. *People v. Fern*, 189 Ill. 2d 48, 54, 723 N.E.2d 207 (1999).

There remains one other issue we choose to address, although the parties have not directly raised it. Although we read *Partee* as limiting a returned fugitive's right to appellate review to those issues that implicate fundamental fairness and due process (see *Partee*, 125 Ill. 2d

at 31), a disparity remains between the rights afforded a defendant who has been present for trial and a returned fugitive. The former is always subject to time limits. A defendant must establish a lack of culpable negligence to justify a delay in accessing the Act (725 ILCS 5/122—1(c) (West 2000); *People v. Wright*, 189 Ill. 2d 1, 10, 723 N.E.2d 230 (1999)). A returned fugitive, however, may use section 115—4.1(g) to seek appellate review without establishing that his absence from trial was not willful. *Partee*, 125 Ill. 2d at 31-32. We conclude that this difference between the Act and section 115—4.1(g) of the Code must be based on a legislative policy decision that trials *in absentia* are entitled to heightened scrutiny. See *People v. Stark*, 121 Ill. App. 3d 787, 790, 460 N.E.2d 47 (1984) (statutory scheme of *in absentia* statute provides a defendant with additional means of securing a new trial). We believe we have complied with the spirit of *Stark* in our review of the record.

 Finally, we reject the State's alternative argument that section 115—4.1(g) does not apply unless a defendant first establishes that his absence is without fault and due to circumstances beyond his control. *Partee* has answered this question. *Partee*, 125 Ill. 2d at 28-29.

Should there be a showing on review that a defendant's absence was without fault and due to circumstances beyond his control, review of the issues raised by the defendant with respect to the underlying trial is unnecessary. The remedy for a defendant prevailing on a section 115—4.1(e) motion is a new trial, not a review of the errors occurring in the first trial. See 725 ILCS 5/115—4.1(e) (West 2000) (a defendant must be granted a new trial if he shows that his absence was without fault and due to circumstances beyond his control).

 Last, we agree with the State that there is no jurisdiction under Rule 606. 134 Ill. 2d R. 606. Defendant concedes as much in his jurisdictional statement which, unlike the notice of appeal, invokes only section 115—4.1(g).

The State's motion to dismiss is denied. None of the substantive issues raised in defendant's brief challenges the fundamental fairness of the *in absentia* trial. There is no jurisdiction under Rule 606. Defendant's conviction and sentence are affirmed.

Affirmed; motion denied.

JUSTICE GORDON, specially concurring:

I concur with the ultimate result of the majority's decision. However, my concurrence rests solely upon the analysis of the substantive issues on their merits. I disagree with the majority, however, and fully align myself with the position of the dissent with respect to

defining the scope of review obtainable under section 115—4.1(g) of the Code of Criminal Procedure of 1963 (hereinafter, Code) (725 ILCS 5/115—4.1(g) (West 2000)). Along with the dissent, I cannot find any basis in the language of the statute to narrow its application solely to errors invoking questions of constitutional due process or fundamental fairness. To effect such a statutory alteration would require legislative intervention and a repudiation of our previously established precedents, including our decisions in *People v. Williams*, 274 Ill. App. 3d 793, 655 N.E.2d 470 (1995), and *People v. Stark*, 121 Ill. App. 3d 787, 460 N.E.2d 47 (1984), upon which our supreme court relied in *People v. Partee*, 125 Ill. 2d 24, 34, 530 N.E.2d 460, 464 (1988).

The majority, with impressive ingenuity, attempts to harness *Partee* to support its position when, if anything, in the clear light of day, its position is wholly inconsistent with the tenor of *Partee*. The majority focuses upon the statement in *Partee* that section 115—4.1(g) analogizes a section 115—4.1(e) motion to "an action for postconviction relief under section 122—1 of the Code." *Partee*, 125 Ill. 2d at 35, 530 N.E.2d at 465. The majority attempts to extrapolate that analogy far beyond the limited use for which the analogy was intended in *Partee* and beyond the permissible range of judicial statutory construction. The majority contends that since a collateral attack by postconviction petition is restricted to matters of constitutional dimensions, so too in comparing section 115—4.1(g) to section 122—1, *Partee* intended to cloak a section 115—4.1(g) procedure with the same restrictions. This contention by the majority is untenable. A postconviction petition under section 122—1 is not confined to constitutional issues merely because it constitutes a collateral attack on a judgment, but, rather, it is confined to constitutional issues by the express statutory provisions of its enabling act. The statute that provides for postconviction petitions explicitly limits its availability to "a substantial denial of *** rights under the Constitution of the United States or the State of Illinois or both." 725 ILCS 5/122—1(a) (West 2000). Section 115—4.1(g) contains no such limitation and the statutory language of that provision does not provide a matrix to warrant or justify imposition of such restrictions by judicial fiat.

Viewed in context, the analogy drawn by *Partee* between section 115—4.1(g) and section 122—1 is to establish that section 115—4.1(g) should be viewed as if it were a collateral attack as under section 122—1 and therefore parallel to Rule 606 without displacing it. As pointed out, there is nothing in the nature of a collateral attack that would limit the scope of such attack to constitutional issues except where, as under section 122—1, the statute expressly articulates and provides for such limitation. To hold otherwise would constitute a usurpation of a legislative prerogative.

Ironically, the majority attempts to use *Partee* to diminish the appellate rights of a fugitive when in fact its manifest thrust is to expand those rights by providing two distinct but parallel routes for obtaining appellate recourse, the first under Supreme Court Rule 606(a) and the second under section 115—4.1(g). As pointed out, the analogy between sections 115—4.1(g) and 122—1 is deployed in *Partee* to provide a theoretical basis to explain why section 115—4.1(g) should not be construed to supersede and preclude the right of a fugitive to appellate recourse through Supreme Court Rule 606 as well, but does not purport to limit the scope of review under either route.

In fact, if anything, the holding and reasoning in *Partee* militate precisely the opposite conclusion. If, as the majority contends, *Partee* had considered the scope of review under section 115—4.1(g) to be limited to constitutional issues only, it could have readily pointed out that difference between a so limited section 115—4.1(g) appeal and an unrestricted Rule 606 appeal in response to the contention that the concomitant availability of both gives a fugitive two bites at the same appellate apple. Instead, *Partee* fields the "two bites at the same apple" contention by pointing out that a fugitive who deploys both appellate routes to file two appeals, one *in absentia* under Rule 606 and the other upon his return under section 115—4.1(g), would not be permitted in the second appeal to relitigate issues already subsumed in the earlier appeal under the doctrines of *res judicata*, collateral estoppel, waiver and law of the case. See *Partee*, 125 Ill. 2d at 36-37. This would in and of itself denote that appeals under both provisions would otherwise share the same breadth and scope, except that when a Rule 606 appeal is first deployed a second appeal under section 115—4.1(g) would be bound by determinations made in the earlier appeal.

Moreover, the fallacy in the majority's interpretation of *Partee* is further reflected in the fact that *Partee* upholds the rule that although an appeal may be taken by a fugitive *in absentia* under Supreme Court Rule 606, the appellate court is not compelled to hear it while the appellant remains a fugitive. In that regard, *Partee* states "[w]e adhere to the century-old rule that an appellate court has the discretionary power to refuse to hear a fugitive's appeal unless and until the fugitive returns to the [court's] jurisdiction. (*People v. Estep* (1952), 413 Ill. 437 [,109 N.E.2d 762]; *McGowan v. People* (1882), 104 Ill. 100.)" *Partee*, 125 Ill. 2d at 37, 530 N.E.2d at 466. Under *Estep* and *McGowan* upon which *Partee* relies, the appellate court may refuse to hear the appeal while the appellant remains a fugitive and may dismiss such an appeal if the fugitive does not physically appear within a reasonable time. See *Estep*, 413 Ill. at 440-41, 109 N.E.2d at 764-65; *McGowan* 104 Ill. 100.

If the majority in this case were correct in its reading of *Partee*, then instead of two bites at the appellate apple, a fugitive could be left with far less than a single bite, since as a fugitive his Rule 606 appeal could be dismissed and what would remain to the fugitive would be a limited appeal under section 115—4.1(g) restricted solely to constitutional issues. Thus, the support that the majority seeks to draw from the decision in *Partee* is illusory and inconsistent with what *Partee* actually sets forth.

I further note that the policy concerns that apparently trigger the majority's effort to narrowly confine the scope of the section 115—4.1(g) appeal are less than compelling. The seemingly undue largess extended to a fugitive by availing him of two avenues of appeal is temporized by the fact already noted that an appeal under Rule 606 may be rejected at the appellate court's discretion if the appellant chooses to remain a fugitive. On the other hand, if a Rule 606 appeal is allowed to go forward, it would preclude a second appeal of those issues subsumed in his earlier appeal under the doctrines of *res judicata*, collateral estoppel, waiver and law of the case. See *Partee*, 125 Ill. 2d at 36-37, 530 N.E.2d at 465-66.

Moreover, whatever advantage the fugitive may receive to facilitate his right to appeal is countervailed by the fact that he could be tried *in absentia* in the first instance, notwithstanding the incursion of a defendant's otherwise inherent right to be present at his trial. This too was articulated in *Partee* noting the existence "of a complex series of tradeoffs [in the legislation involved here] designed to balance the defendant's right to be present at trial, the State's interest in the expeditious administration of justice, and our traditional distrust of trials *in absentia*." *Partee*, 125 Ill. 2d at 40, 530 N.E.2d at 467. See *Williams*, 274 Ill. App. 3d at 795.

Accordingly, I can find no encouragement in *Partee* to warrant abandonment and repudiation of our previous decisions in *Williams*, *Stark*, *People v. Pontillo*, 267 Ill. App. 3d 27, 640 N.E.2d 990 (1994), and *People v. Manikowski*, 288 Ill. App. 3d 157, 679 N.E.2d 840 (1997), which are discussed extensively in the dissent. In each of these cases, we held that the scope of review under section 115—4.1(g) was unfettered and coextensive with the review generally available under Supreme Court Rule 606. A look at *Manikowski* is of particular interest. As pointed out by the dissent, the court in *Manikowski* specifically contrasted the scope of review under section 115—4.1(g) with the scope of review in a postconviction proceeding under section 122—1 of the Code, stating "[p]ostconviction petitions must demonstrate a process flawed by error of constitutional magnitude. Such *petitions do not subject trial error to judicial review. A section 115—4.1(e) motion,*

however, opens the entire underlying judgment and sentence to further scrutiny. See 725 ILCS 5/115—4.1(g) (West 1992); *People v. Partee*, 125 Ill. 2d 24, 530 N.E.2d 460 (1988)." *Manikowski*, 288 Ill. App. 3d at 161, 679 N.E.2d at 843.

Thus, for the foregoing reasons, I must align myself with the dissent with regard to the procedural issue pertaining to the scope of review. However, as indicated, I concur with the majority in its ultimate affirmance based upon its analysis of the merit of the substantive issues.

JUSTICE COUSINS[1], dissenting:

While I concur in part with the majority's answer regarding the ultimate issue in the case, I disagree with the majority's view that the answer to the ultimate issue "may be 'yes,' but only if the record on appeal establishes that the trial conducted in the defendant's absence violated principles of fundamental fairness and due process under the cause and prejudice test adopted by our supreme court." 339 Ill. App. 3d at 514. The majority cites to *People v. Simpson*, 204 Ill. 2d 536 (2001), *People v. Jackson*, 205 Ill. 2d 247 (2001), and *People v. Jimerson*, 166 Ill. 2d 211, 652 N.E.2d 278 (1995). However, these cases are inapposite.

The majority's rationale conflicts with the reasoning in analogous cases previously decided by this court. In *People v. Williams*, the court held that a defendant appealing from a denial of a section 115—4.1(e) motion to vacate the conviction and sentence was allowed to have a disposition on the merits of the conviction and sentence in the appeal under section 115—4.1(g) of the Code. *Williams*, 274 Ill. App. 3d at 795. The *Williams* court concluded that claims relative to the proceedings *in absentia* could be reviewed on the merits because section 115—4.1(e) makes the appeal on the merits part of the appeal on the ruling of the collateral attack. *Williams*, 274 Ill. App. 3d at 799. See also *Partee*, 125 Ill. 2d. at 33-34 (citing to *People v. Stark*, 121 Ill. App. 3d 787, 790, 460 N.E.2d 47 (1984), that section 115—4.1 merely provides defendant with additional means of securing a new trial). The review, however, must be brought within the time frame required by Supreme Court Rule 606(b) from the final order of the collateral proceeding. *Williams*, 274 Ill. App. 3d at 799.

In *Stark*, this court recognized the possibility that, when properly requested, a defendant tried *in absentia* may receive review on the merits of the underlying judgment in a section 115—4.1 motion. The court stated:

---

[1]Justice Cousins participated in the disposition of this case before his retirement.

"While it may well be \*\*\* that a defendant is given a second bite of the apple when pursuing a motion under section 115—4.1 and, if successful, will undermine an otherwise valid conviction and sentence, this section is in harmony with article I, section 4 of our constitution which confers upon a defendant the right to appear and defend himself in person. Section 115—4.1 is a statutory mechanism to protect this constitutional right. By predicating the granting of a new trial or sentencing hearing exclusively upon defendant's excusable absence from the jurisdiction, it is apparent that the legislature distinguishes between a direct criminal appeal on the merits and an appeal based upon an alleged violation of defendant's right to be present at all criminal proceedings. This section was not intended to set forth the appropriate procedure for appealing from a conviction or sentence obtained *in absentia*; rather, it merely provides an additional means of attacking the conviction or sentence." *Stark*, 121 Ill. App. 3d at 792-93.

In *People v. Pontillo*, 267 Ill. App. 3d 27, 640 N.E.2d 990 (1994), this court again concluded that the collateral remedy under section 115—4.1 of the Code will support an appeal separate from the direct appeal of the underlying judgment. *Pontillo*, 267 Ill. App. 3d at 33. In *Pontillo*, the defendant did not file an appeal from the judgment and sentence entered *in absentia*. Six years later defendant timely filed an appeal from an order denying his motion under section 115—4.1 of the Code. *Pontillo*, 267 Ill. App. 3d at 28. The *Pontillo* court noted the following:

"Although defendant filed no notice of appeal within 30 days of the denial of his 1986 motion for new trial, he filed a timely notice of appeal from the trial court's November 17, 1992, denial of his motion for new trial or new sentencing hearing under section 115—4.1(e), which allows for the consideration of a defendant's claim that his absence from trial was both without his fault and due to circumstances beyond his control. Section 115—4.1(g) provides for an appeal from such denial:

'A defendant whose motion under paragraph (e) for a new trial or new sentencing hearing has been denied may file a notice of appeal therefrom. *Such notice may also include a request for review of the judgment and sentence not vacated by the trial court.*' (Emphasis added.) Ill. Rev. Stat. 1985, ch. 38, par. 115—4.1(g) (now 725 ILCS 5/115—4.1(g) (West 1992)).

Our supreme court has characterized section 115—4.1(e) as a collateral remedy which, under appropriate circumstances, may be utilized by a defendant who has been convicted *in absentia* as a method of securing review of his conviction. It is analogous to an action for post-judgment relief under section 2—401 of the Code of

Civil Procedure (735 ILCS 5/2—401 (West 1992)) or an action for post-conviction relief under section 122—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 122—1 (now codified, as amended, at 725 ILCS 5/122—1 (West 1992))) and will support an appeal separate from a direct appeal of the underlying judgment. *People v. Partee* (1988), 125 Ill. 2d 24, 31-38.

Because a section 115—4.1(e) proceeding focuses solely upon issues relating to a defendant's absence from trial at the time of his conviction, it is evident that an appeal from the court's denial of a motion under that section would ordinarily be confined to the same issues. However, section 115—4.1(g) expressly provides a separate device enabling the defendant to obtain, in addition, a review of allegations of error relating to the underlying conviction. Specifically, he must include in his notice of appeal 'a request for review of the judgment and sentence not vacated by the trial court.' (Ill. Rev. Stat. 1985, ch. 38, par. 115—4.1(g) (now 725 ILCS 5/115—4.1(g) (West 1992)).) Without such a request, the notice of appeal would necessarily pertain only to issues relating to the order denying his section 115—4.1(e) motion for a new trial or new sentencing hearing, *i.e.*, whether his absence from court was without his fault and due to circumstances beyond his control. An appellate court has jurisdiction of only those matters raised in the notice of appeal. [Citations.]" *Pontillo*, 267 Ill. App. 3d at 33-34.

It appears that the rule proposed by the majority requires the same showing necessary for an evidentiary hearing under section 122—1(a) of the Code (725 ILCS 5/122—1(a) (West 2000)) be made before a review of merits of an underlying judgment and sentence in a section 115—4.1 motion. This court has drawn a distinction between the two sections of the Code when a postconviction motion was filed instead of a section 115—4.1 motion in *People v. Manikowski*, 288 Ill. App. 3d 157, 679 N.E.2d 840 (1997). In that case we stated:

"The petition presents a serious question of timeliness. It is clearly filed beyond the time constraints imposed on postconviction relief under section 122—1 of the Code of Criminal Procedure of 1963. 725 ILCS 5/122—1 (West 1992). The question is joined by the allegation that delay was not due to defendant's culpable negligence. Such a question does not arise under section 115—4.1(e). The potential relief it provides is not limited by the passage of time. Moreover, section 115—4.1(e) *requires* the precise evidentiary hearing unsuccessfully pursued by the petition.

These obvious advantages are overshadowed, however, by the fact that a section 115—4.1(e) motion clears a path to test error that occurred in the conduct of defendant's trial. Postconviction petitions must demonstrate a process flawed by error of constitu-

tional magnitude. Such petitions do not subject trial error to judicial review. A section 115—4.1(e) motion, however, opens the entire underlying judgment and sentence to further scrutiny. See 725 ILCS 5/115—4.1(g) (West 1992); *People v. Partee*, 125 Ill. 2d 24, 530 N.E.2d 460 (1988). Since defendant's conviction and sentence have never been reviewed, even an unsuccessful effort pursued under section 115—4.1(e) harbors an advantage. It provides a direct appeal of the conviction and sentence." (Emphasis in original.) *Manikowski*, 288 Ill. App. 3d at 160-61.

To the extent that the majority's opinion in the instant case purports to require defendant to make a showing in the record that the trial violated principles of fundamental fairness and due process under the cause and prejudice test, it is inconsistent with *Williams*, *Manikowski*, *Stark* and *Pontillo*. The majority cites to no authority that is apposite to support the holding that a defendant tried *in absentia* must first allege due process violations supported by the record before a review of the merits of the underlying judgment and sentence.

Because of the analysis requiring that the trial conducted in a defendant's absence violated principles of fundamental fairness and due process before a defendant tried *in absentia* may obtain a review of his conviction and sentence under section 115—4.1 of the Code, the majority declines to address the substantive issues raised in defendant's brief. In my view, we should address the substantive issues raised in defendant's brief. Perforce, I dissent.